## TEXAS & P. RY. CO. v. SPRADLING.

(Circuit Court of Appeals, Fifth Circuit. January 21, 1896.)

1. NEGLIGENCE—PLEADING AND PROOF.
   Upon the trial of an action against a railroad company for personal injuries caused by collision of a train with plaintiff at a crossing, the negligence alleged being a failure to give the signals required by law, together with general allegations of careless and rapid approach to the crossing, it is not error to admit evidence, developed on the trial from defendant's witnesses, and showing that the engineer and fireman saw plaintiff approaching the crossing in time to have avoided the injury, such facts having been previously unknown to the plaintiff, nor to charge the jury that if they believed that the defendant's employés saw the plaintiff in time to avoid the injury, and did not avoid it, the defendant was guilty of negligence; the charge having elsewhere fairly submitted the question of negligence resulting from failure to give the signals.

2. RAILROADS—SIGNALS AT CROSSINGS.
   The statute relating to signals at railway crossings provided that every locomotive should have a bell or a whistle; that the whistle should be blown or the bell rung at least 80 rods from a crossing; and that such bell should be kept ringing until the engine crossed the public road or stopped. The court charged the jury that the statute provided that the whistle should be blown or the bell rung at least 80 rods from a crossing, and be kept ringing or blowing until the engine crossed the road or stopped. Held no error.

3. SAME—RECIPROCAL DUTIES.
   The court instructed the jury that a person attempting to cross a railroad track has a right to expect that the railroad will give the signals required by law, and if he is without fault, and the neglect of the railroad results in his injury, he can recover, and declined to instruct the jury that neither plaintiff nor defendant had a right to rely upon the other's exercising the care required by law, but it was the duty of each to use the care which a person of ordinary prudence would use. Held no error.

In Error to the Circuit Court of the United States for the Northern District of Texas.

Mrs. Clara Spradling brought an action in the judicial district court of Dallas county, Tex., against the Texas & Pacific Railway Company, for personal injuries sustained by the alleged negligence of the employés of the defendant company. The cause was removed to the circuit court of the United States for the Northern district of Texas; whereupon the plaintiff filed an amended petition, with the following features: She claimed damages in the amount of $15,000. She alleged that she was a citizen of Texas; that the railroad of the defendant intersected the public highway from Dallas to Kaufman, about five miles east of Dallas, at a public crossing maintained and recognized by the defendant. On the 15th day of November, 1892, the plaintiff, with "Dock" Brock and a child named Jessie Rogers, was going along the Dallas and Kaufman Road in a two-horse wagon. They were going from Dallas to the home of the plaintiff. It is alleged that the plaintiff, with proper caution, attempted to cross the railway track of the defendant at the crossing above named; but, before she could do so, a westward-bound passenger train of the defendant struck the vehicle. This was totally demolished, and the plaintiff was thrown violently to the ground, and greatly bruised, injured, and shocked. This crossing, on account of the topography of the surrounding country and the conditions and grades of the public road and railroad, is described as dangerous and unsafe. This was well known, the petition states, to the defendant, for often theretofore at that crossing the trains had collided with and injured divers and numerous vehicles and persons. On the occasion when the plaintiff was injured, it is further stated that the employés in charge of the train rang no bell, and blew no whistle, but negligently and carelessly and at a very rapid rate approached the crossing, without giving a warning signal of any kind whatever, to apprise the plaintiff of its approach and her danger. The plaintiff describes her injuries as consisting of two ribs crushed and broken on her left side, two ribs crushed and broken on her right side, her left arm broken below the elbow, her nose broken and crushed, and serious injuries, cuts, and bruises on her head and face, side, and hip, and serious and painful internal injuries in her side and chest. She suffered much pain, and was compelled to take medicine costing $25. Her medical attendance cost her $50, and the hire of a nurse $150. She is a widow, and was 40 years old at the time the petition was filed; and she states that prior to her injuries she was a remarkably strong and healthy woman, attended to her household duties, managed and superintended her farm and stock, earned, by such attention and management, $500 per annum, and her attention and services were well worth that sum. Since her injuries, she has been an invalid, confined to her bed most of the time, and is wholly unable to attend either to her household duties, or to her farm and stock. She is dependent upon her own exertions for support. All of her injuries are in their nature permanent, and for the rest of her life she will be unable to do any work of any kind for her support, because of said injuries. She will be an invalid, and will require the constant attention of a nurse. She avers that she was guilty of no negligence or want of care herself, but that the negligence and carelessness of the defendant was wanton, gross, regardless of duty to the public and to the plaintiff, and she therefore asks exemplary damages. These are the material averments. For answer, the defendant denies the allegations in the plaintiff's petition, and, by special plea, contends that the plaintiff's own negligent conduct, concurring with the negligence of her companion, one Dock Brock, was the immediate occasion of the accident, which otherwise would not have occurred, and she would not have been injured.

The following evidence was introduced: The plaintiff testified: "I did not hear the passenger train that struck the wagon I was in. In approaching the railway crossing, I heard a whistle. We were then about forty or fifty yards from the railroad crossing when I heard the whistle, and I had the wagon stopped until the train passed, thinking that was the only train that was to pass. The dirt road there is below the grade of the railroad, and

runs parallel with the railroad track to the crossing. After that train passed, we immediately drove onto the crossing, and, just as the wagon got on the railroad crossing, I looked around. and the train struck the hind wheels of the wagon. I did not have time to speak or think. They did not ring a bell or blow a whistle. I had no knowledge of the approach of the train, and thought the train that had just passed was the only train to pass. * * * We had to go up hill to get to the crossing. The crossing is almost right at the end or mouth of that cut. You cannot see an approaching train from the side of the track we were on, coming from the east out of that cut, until you get right on the crossing. The train that had just passed made noise, but this one I did not hear at all. * * * I heard the whistle of the train that passed, and I had the wagon stopped before we went on the crossing, and we waited until it passed. I did not dream of another train, and could not see and did not hear the train that hit the wagon until it was just on us." Dock Brock was driving. He testified that, when he and the plaintiff were about 200 yards from the crossing, they heard a train coming from the east, going to Dallas. They stopped within 75 yards of the crossing for about a minute, and waited for that train to pass. As soon as it passed, they at once drove upon the crossing, going at an ordinary rate of speed, when they happened to turn their heads to the left. and saw an engine of another train coming from the east, and within about 4 or 5 yards of the wagon. The witness stated that when he first saw the engine, the front wheels were just at the south rail of the track; that he struck the horse, and got the front wheels off the track. The train struck the hind wheels, tore them up, turned the wagon over, threw them out, and injured the plaintiff. The first train, which consisted of an engine and caboose, was about two minutes ahead of the passenger train which struck them. "I heard no noise of an approaching train," he states, "until it struck the wagon. I could not possibly have gotten out of the way after I saw it. I used every effort to get the team and wagon off the track. I was crossing said track somewhat slowly until I saw said train. I then made the horses move as rapidly as I could." William Wilcox, the locomotive engineer, a witness for the defendant, testified that it was in violation of the rules of the railway company to run one train after another over the railroad in less than 10 minutes apart. He also stated that the train that struck the plaintiff's wagon gave the usual signal for crossings. He was the engineer in charge of the train. He stated that the train was running 20 or 25 miles an hour, down grade, and it was about dark. He says: "We were about one hundred and fifty feet from the crossing when we first observed the parties on the crossing. I was on the right side of the engine, on the side the parties approached the crossing, and did everything I could to stop the train as soon as I saw them approach the crossing, not only for their safety, but my own. I suppose the cut is about eight hundred feet long." The fireman testified that he saw a two-horse wagon coming up on the track about 1,000 feet from the crossing; that, when they came by the front of the engine. he could see the people; that they did not stop, but that the driver was whipping the horses. Bohannon, Tom Davis, and E. Davis, witnesses for the plaintiff, testified that the view of the train east from the cut is obscured by the cut; that a traveler on the highway cannot see it until he gets directly on the track at the crossing.

The jury found damages for the plaintiff in the sum of $2,250. The circuit court overruled a motion made by the defendant for a new trial; whereupon the defendant filed its bill of exceptions, with the following assignments of errors: (1) The court admitted, over objection of defendant, evidence tending to show that the engineer and fireman in charge of the engine and train which struck the wagon in which plaintiff was riding saw the plaintiff and the wagon approach the crossing, and that the employés might have stopped the train thereafter in time to have avoided the injury, to all of which defendant excepted, for the reason that there were no allegations in the petition to authorize such evidence, and then and there preserved its bill of exceptions. (2) The court, after instructing the jury correctly, as conceived by defendant, on the issues raised by the pleadings, gave the following charges hereinafter complained of by the defendant, and refused special charges

hereinafter complained of, which were tendered by defendant, as follows: The court charged as follows: "The statute of Texas provides that each locomotive engine shall have on it a bell or steam whistle, and the bell shall be rung or the whistle blown at a distance of at least eighty rods from the place where a railroad shall cross any road or street, and be kept ringing or blowing until it shall have crossed said road or stopped." Defendant excepted to the same, on the ground that the statute provides as follows: "A bell of at least thirty pounds' weight or a steam whistle shall be placed on each locomotive engine, and the whistle shall be blown or the bell rung at a distance of at least eighty rods from the place where the railroad shall cross any public road or street, and that such bell shall be kept ringing until it shall have crossed such public road or stopped." (3) The court charged as follows: "A person attempting to cross a railroad track has the right to expect that the railroad will give the signals required by law, and if he is without fault, and such neglect on the part of the railroad results in his injury, then he can recover;" and thereby committed error, to which defendant excepted, because the use of the expression "has the right to expect" in connection with the words quoted, was a clear error of law, and was most likely misleading to the jury, in that the rights of the parties and their obligations as to the use of a crossing are reciprocal, and call for the exercise of care on the part of each, in no way predicated upon the expectation that the other will not be negligent. (4) The court refused to give defendant's special charge No. 4, as follows: "You are instructed that neither the plaintiff nor the defendant had the right to rely upon each other exercising the care exacted by law of both in the use of the crossing, but it was the duty of each in the use of the crossing to use that care that a person of ordinary prudence would have used under similar circumstances."—to the refusal to give which charge the defendant excepted, and says the same was material error, in view of the charge hereinafter complained of (5) The court gave the following charge, requested by the plaintiff: "If the jury believe from the evidence that the agents, employes or servants of the defendant did see the plaintiff at a distance sufficiently remote from the place of the accident; that, by the use of the means and appliances in their hands, they could have stopped the engine they were running before reaching the crossing where the accident occurred, so as to have avoided injuring plaintiff; and further find that they failed to so stop said train,—then and in that event you are instructed that defendant is guilty of negligence, and you should find for the plaintiff."—to which defendant excepted, because the same tendered an issue nowhere raised by the pleadings or justified by the evidence, and submitted an incorrect proposition of law, in this: those in charge of the engine were, if the issue had been properly tendered, under no obligation to stop the train or engine until the danger of collision was apparent, and the charge contained no such qualification. (6) The court refused defendant's special charge No. 5, as follows: "You are instructed that, in the consideration of whether or not defendant was guilty of negligence, you should confine your deliberations to the issues presented, namely, whether or not defendant failed to give the signals required by law and presented in the general charge of the court; and whether such failure was the proximate cause of the injury. If you conclude that the proximate cause of the injury is to be attributed to any other cause than the failure to ring the bell or blow the whistle, or that plaintiff's negligence contributed thereto, you will find for the defendant,"—to which refusal the defendant excepted, as the said request to charge properly limited the consideration of the jury to the issues presented by the pleadings.

Alexander, Clark & Hall and T. J. Freeman, for plaintiff in error. Kearby, McCoy & Hudson, for defendant in error.

Before McCORMICK, Circuit Judge, and BOARMAN and SPEER, District Judges.

SPEER, District Judge (after stating the facts as above). The statute of Texas by which it was intended to avoid casualties at

crossings where the roads of the country intersect railways provides as follows:

"A bell of at least thirty pounds weight, or a steam whistle shall be placed on each locomotive engine, and the bell shall be rung or whistle blown at the distance of at least eighty rods from the place where the railroad shall cross any road or street, and to be kept ringing or blowing until it shall have crossed such road or street, or stopped." Rev. St. Tex. art. 4232.

There was no dispute as to the fact of the accident or the extent of the injuries sustained by the plaintiff, and the controverted issues were: First. Did the defendant disregard its duty as defined by the statute above quoted, and, indeed, the common law? And, secondly, did the plaintiff fail to exercise the ordinary care which might have avoided the accident? The jury determined both of these issues in favor of the plaintiff, and, unless there were, in the conduct of the trial, such errors on the part of the court as will necessarily compel a resubmission of the cause to a jury, the verdict must be sustained. The law relating generally to both of these issues has been recently discussed and defined by the supreme court of the United States in a valuable decision,—Railroad Co. v. Griffith (decided November 18, 1895) 16 Sup. Ct. 105; Mr. Chief Justice Fuller delivering the opinion. The statute alleged to have been disregarded, the averments of negligence, and the grounds of defense were in that case substantially the same as in this. There the finding of the lower court in favor of the plaintiff was sustained. It is superfluous to do more than refer to the reasoning of the chief justice and the conclusions of the court in that case.

The exception of the plaintiff in error, to the effect that the court erred in admitting evidence to show that the engineer and fireman saw the plaintiff with the wagon approaching the crossing, and that these employés of the defendant might then have stopped the train in time to have avoided the injury, is not, in our opinion, well taken. It is true that there were no averments in the petition charging the defendant with negligence on that account, but the evidence objected to was given by the defendant's witnesses. From its nature it could not have been known to the plaintiff. The facts were a part of the res gestæ, and were therefore admissible, and were otherwise admissible under the several general allegations of negligent, careless, and rapid approach to the crossing.

Nor is the criticism of the charge of the court in the second assignment of error important. The court instructed the jury that the statute provided that the bell shall be rung, or whistle blown, at a distance of at least 80 rods from the place where a railroad shall cross any road or street, and be kept ringing or blowing until it shall have crossed. The plaintiff in error points out that the true language is that the whistle shall be blown or the bell rung at a distance of at least 80 rods from the place where a railroad shall cross any public road or street, and that such bell shall be kept ringing until it shall have crossed. The court merely added the words "or blowing" after "ringing." This inadvertence, if it be such, was favorable to the defendant, for it afforded the railway the choice of two signals where the statute only permitted one;

namely, the continued ringing of the bell. The jury, it seems, found that the defendant did neither.

Exception is also taken to the instruction of the court expressed as follows:

"A person attempting to cross a railroad track has a right to expect that the railroad will give the signals required by law, and if he is without fault, and such neglect on the part of the railroad results in his injury, then he can recover."

This is unobjectionable. It is indeed, stated with more careful regard to the rights of the defendant than seems to have been thought necessary by the supreme court of Texas. In the case of Railway Co. v. Graves, 59 Tex. 332, that court declared:

"A person, in approaching a railway crossing, has the right to expect that the railway company will give such signals of an approaching train as prudence and the law require; and if, relying upon this, he attempts to cross the track without knowledge or means of knowledge of the approach of the train, and is injured by reason of the failure of the employés of the railway to perform a duty prescribed by law, then he is entitled to recover."

This is substantially the charge as complained of, save that the instruction of the presiding judge in this case required that the plaintiff herself be without fault. That was a clear indication of the reciprocal duty of ordinary care on the part of the plaintiff.

The plaintiff in error further insists that the court should have given the jury the following request to charge:

"You are instructed that neither the plaintiff nor defendant had the right to rely upon the other exercising the care exacted by law of both in the use of the crossing, but it was the duty of each, in the use of the crossing, to use that care that a person of ordinary prudence would have used under similar circumstances."

This is the converse of the instruction of which complaint is made in the assignment of error last discussed. Since we think the instruction there complained of was proper, it follows that this request was erroneous. Since both parties are charged, we think, with the mutual duty of keeping a careful lookout for danger, and since the degree of diligence to be exerted on either side is such as a prudent person would exercise under the circumstances of the case endeavoring fairly to perform his duty, each has the right to expect that the other will do his duty. This language does not import that either is absolved from the duty of ordinary care. To illustrate, an engineer may perceive a person driving a wagon approaching a crossing. His train, let us say, is running at a high speed, to conform to the requirements of the schedule for trains as prescribed by the company. When he gives the appropriate signal for the crossing, he has the right to expect that the person in control of the team will not drive on the track, but will stop. The engineer surely need not stop every time he sees an approaching team. And if, without fault on his part, collision results, the railway company will not be liable for the damage. It follows that one driving the wagon has the right to expect that the engineer will give the signal. If care is taken to listen to the signal, and none is heard, and, not aware of the approaching train, the wagon is driven on the track,

and the collision results, the railway company will be liable. Besides, in this case the duty of each party was elsewhere distinctly set forth, in the general charge of the court.

In the fifth assignment of error, complaint is made that the court charged the jury:

"If the jury believe from the evidence that the agents, employés, or servants of the defendant did see the plaintiff at a distance sufficiently remote from the place of accident that, by the use of the means and appliances in their hands, they could have stopped the engine they were running before reaching the crossing where the accident occurred, so as to have avoided injuring the plaintiff, and further find that they failed to so stop said train, then and in that event you are instructed that the defendant is guilty of negligence, and you should find for the plaintiff."

It must be observed that this instruction is to be construed in connection with other portions of the charge, which, in our opinion, fairly submitted to the jury the question of negligence resulting from the failure, to give the signals for the crossing, required by law. In the absence of specific allegations of negligence based upon the failure to stop the train after the wagon of the plaintiff was seen, the defendant might with more propriety complain of this charge, were it not for the fact, that the plaintiff's case is primarily based on the failure to give the signals as the proximate cause of the injury. It is to be observed that the facts upon which this charge was based were brought out in the defendant's testimony, namely, in the evidence of the engineer and the fireman. The plaintiff could by no possibility have foreseen that this feature of the case would be presented, and therefore should not be deprived of its legal effect on the minds of the jury because she omitted to refer to it in her petition. This feature was an unforeseen contingency of the trial. If the defendant having failed to give the signals at the time and place required, and its employés, at a distance of 1,000 feet from the crossing, perceived the plaintiff going on the track, a double duty devolved upon the employés to do all in their power to stop the train. If, then, they could stop the train, and did not, it was negligence of the gravest character. They were obliged to conclude that the danger was apparent, because they must have concluded that, in the absence of the danger signals, the persons in the wagon were satisfied of their own safety. If, then, the engineer neglected this duty, it was an incident of negligence which the jury might consider in view of the general averment as to the very rapid, reckless, and careless manner in which the crossing was approached.

For the same reason, we have concluded that the sixth assignment of error is not of sufficient importance to reverse the action of the court below, which, in its entirety, sufficiently conserved the rights of the defendant, and accorded only moderate compensation for the painful and permanent injuries sustained by the plaintiff. For these reasons, the judgment of the court below is affirmed.