ROBERT R. WILKINSON, Appellant, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Respondent.

No. 1917. Decided January 12, 1909 (99 Pac. 466).

1. NEGLIGENCE—ORDINARY CARE.—In all cases grounded on negligence, the law imposes the duty of ordinary care which must be exercised by both the one causing the injury and the one sustaining it; the standard of care being that degree which men of ordinary intelligence and prudence would exercise under similar circumstances. (Page 115.)

2. RAILROADS—CROSSING ACCIDENT—CARE REQUIRED. In discharging the duties imposed by law on a railroad company and a traveler at a crossing, neither party may ordinarily rely on the other, each being required to perform the duty imposed on him, and, if it is undisputed that the complaining party has not done so, he cannot recover, except under peculiar circumstances, as a matter of law, regardless of defendant's negligence. (Page 116.)

3. RAILROADS—CROSSING ACCIDENT—CARE REQUIRED OF TRAVELER. In attempting to cross a railroad track, a traveler as a matter of law was bound to listen for signals, notice signs put up as warnings, and look attentively up and down the track, and if, by looking, he could have seen an approaching train in time to escape, it must be presumed, in case he was injured by a collision, either that he did not look, or, if he did look, that he did not heed what he saw, and was therefore negligent per se.[1] (Page 116.)

---

[1] Teakle v. S. P., L. A. & S. L. Ry., 32 Utah 276, 90 Pac. 403, 10 L. R. A. (N. S.) 486; Rogers v. R. G. W. Ry. Co., 32 Utah 367, 90 Pac. 1075.

4. RAILROADS—CROSSING ACCIDENT—LAST CLEAR CHANCE. Where the last clear chance doctrine is involved in an action growing out of a railroad crossing accident, the case is ordinarily one' for the jury, though the precedent and concurring negligence of both parties is conceded or established without dispute. (Page 123.)

5. RAILROADS—CROSSINGS—SIGNALS—STATUTES. Under Comp. Laws 1907, section 447, requiring engines or trains to stop at street grade crossings, and give a signal by two blasts of the whistle where no interlocking signal apparatus and derailing switches are used, it could not be presumed, in the absence of proof, that a crossing at which plaintiff was injured by defendant's alleged failure to give signals was one where signals were required. (Page 121.)

6. RAILROADS — CROSSING ACCIDENT — CONTRIBUTORY NEGLIGENCE— WARNING. A traveler injured at a railroad crossing cannot excuse his want of ordinary care in entering on the track in front of an approaching engine because he was not warned. (Page 121.)

7. RAILROADS — CROSSING ACCIDENT — CONTRIBUTORY NEGLIGENCE. Plaintiff driving a horse attached to a covered milk wagon entered a street on which defendant's main railroad line was located. He then saw an engine standing headed in the opposite direction on a switch about 400 yards north of the crossing, at which he was subsequently injured. At the time he looked plaintiff was between 70 and 75 yards north of the crossing, and he, believing that the engine would remain on the switch because it was nearly time for another train of which plaintiff saw the smoke, but which was not then in sight, paid no more attention to the engine, but kept looking for the train, when he turned to cross the track at right angles, and, as he did so, he saw the engine approaching without having rung the bell or blown the whistle, at a speed of from 12 to 20 miles a hour, and it struck plaintiff's horse and wagon before he could escape. *Held*, that plaintiff was negligent as a matter of law. (Page 122.)

8. RAILROADS—CROSSING ACCIDENT—LAST CLEAR CHANCE. Where plaintiff was driving along the side of a railroad track in a place of safety, and, without looking, attempted to cross the track in front of an approaching engine, and was struck and injured, he was not entitled to recover on the ground that defendant's servants by the exercise of ordinary care could have seen him going into a place of danger, and could have prevented the accident. (Page 124.)

APPEAL from District Court, Second District. *Hon. J. A. Howell,* Judge.

Action by Robert R. Wilkinson against the Oregon Short Line Railroad Company. Judgment for defendant, and plaintiff appeals.

AFFIRMED.

*H. H. Henderson* for appellant.

*P. L. Williams, George H. Smith, John G. Willis,* and *E. M. Bagley* for respondent.

FRICK, J.

This is an action for personal injuries and damages to property appellant claims to have sustained through the negligence of respondent's employees. The alleged acts of negligence consisted in failing to give the statutory signals, and in operating a locomotive engine at excessive speed in approaching a public street crossing in the city of Ogden, Utah. The respondent denied the allegations of negligence, and pleaded contributory negligence.

The controlling facts, which are undisputed or conceded, are substantially as follows: On the 26th day of April, 1906, at about 5:30 o'clock p. m., the appellant was traveling, with his horse hitched to a covered milk wagon, south on a street known as Wall avenue, in Ogden City. The respondent's main line of railroad is located upon this avenue running north and south, and is in about the center thereof. That Twenty-first street crosses this avenue at right angles, running east and west. That appellant for some distance was driving parallel with the railroad track on Wall avenue, intending to cross said track on Twenty-first street. That in driving along Wall avenue he saw an engine standing still headed to the north on a switch or side track about four hundred yards north of the crossing. That appellant

looked back and saw this engine as above stated, when he was between seventy and seventy-five yards north of the crossing on Twenty-first street, at which point, he says, "I looked back [north], and saw the engine standing back on the brewery switch."

His counsel then propounded certain questions which appellant answered on direct examination, as follows: "Q. What did you do when you got to Twenty-first street? A. I started to cross the track. Q. Which way were you looking? A. I was looking towards the south, expecting the Cache Valley train to come along, knowing that she was due there. Q. At that time? A. Yes, sir. Q. What happened to you just as you got on the tracks of the Oregon Short Line Railroad? A. I heard a noise, and I looked up, and the engine was right onto me. I just had time to twist my horse around toward the south, expecting them to stop, but they never stopped." On cross-examination, the following questions were put to appellant, and he answered thereto as follows: "Q. After you looked at the engine, when you were seventy-five yards from it, when was the last time that you saw it? Did you see it after that time? A. Not until it hit me. Q. You didn't look again to see where it was? A. No. Q. Did you stop your horse before you started to go across the railroad track? A. No, sir." Appellant further testified that his horse was trotting as he approached and passed onto the crossing; that he was sitting inside of a covered milk wagon which had doors or windows at the sides, and in looking back at the engine he looked through one of these doors or windows; that he had three large and two small milk cans in the wagon which made some noise as he was driving along; that he was well acquainted with the crossing and its vicinity, and had passed over it daily on his milk route and sometimes several times a day; that he worked in the railroad yards some distance from the crossing in question as a stationary engineer, and that he had had some experience as a locomotive engineer;

that it was broad daylight when the accident occurred, and that there were no obstructions between him and the engine or along or near the track he was about to cross; that the Rio Grande Western Railroad track crossed the track of respondent at a point north of the crossing on Twenty-first street, and between said crossing and where the engine was standing on the brewery switch; that appellant assumed that in going south the engine which struck him would stop at this crossing, and give the statutory signals before crossing it; that it did not stop nor give any signals; that in approaching the crossing he saw the smoke of the Cache Valley train in the distance and south of the crossing, which had to pass over the crossing in question, and appellant wanted to get across before it reached there, and he assumed that the engine which struck him would wait on the switch north of the crossing until the Cache Valley train had passed over the crossing; that in view of this he gave little, if any, attention to the engine north of him, but looked south for the Cache Valley train, the smoke of which he could see in the distance and from which he knew it was approaching, but the train itself, appellant says, "wasn't in sight." Appellant and other witnesses testified that the engine in passing south from where it stood on the switch neither sounded the whistle nor rang the bell, and that it was running at a rate of speed variously estimated at from twelve to twenty miles an hour, when it struck appellant's horse and wagon. Appellant further stated that the track he was about to cross was the main track of respondent's railroad, and that he assumed that the engine he saw standing at the switch to the north would not pass onto the main track in the face of the Cache Valley train which was about due from the south.

Upon substantially the foregoing evidence, the appellant rested his case and the respondent also rested, and moved the court for a directed verdict for respondent. The court granted the motion, and directed the jury to return a verdict in favor of respondent. Appellant excepted to this instruc-

tion, and now insists that the court erred in directing a verdict and in not submitting the case to the jury on the evidence submitted by him.

Appellant's counsel strenuously insists that, in view of all the circumstances disclosed by the evidence, the question of contributory negligence on the part of his client was a question of fact for the jury to pass on. At the hearing the writer at least was much inclined to this view in view of all the circumstances detailed by the appellant; but, after a thorough examination of the authorities, the conclusion has been forced upon him that the facts and circumstances disclosed by this record do not establish an exception to the general rule of law applicable to collisions at street crossings between a traveler and an engine or train of cars. In such cases the courts have formulated a rule of conduct which must be heeded by the traveler, and, if the evidence without conflict or dispute shows that he did not exercise ordinary care in observing the legal duty imposed on him in attempting to cross when he was not confused or his attention diverted by other threatened dangers, he cannot recover, although the railroad company also was guilty of negligence in not giving proper signals or in running its train at an excessive rate of speed. In all cases grounded upon negligence, the law imposes the duty of ordinary care which must be exercised by both the one causing the injury and the one sustaining it, and whether such care has been exercised or not by either one or both, in view of all the circumstances, is ordinarily a question of fact for the jury. The standard of care the law imposes in such cases is, generally speaking, that degree of care which men of ordinary intelligence and prudence would exercise under similar conditions and circumstances. It requires no argument to demonstrate that whether this standard has or has not been met cannot, except in very clear cases, be determined as a question of law, but must necessarily be determined as a question of fact in view of all the surrounding conditions and circumstances. There are, how-

ever, instances involving negligence that are exceptions to this general rule. An exception to it arises in matters where the law prescribes the duty and also defines what constitutes ordinary care in discharging that duty by the one upon whom it is imposed. In this regard the law imposes certain duties upon the railroad company in the operation of its trains in approaching public streets or road crossings, and likewise imposes certain duties upon the traveler who, in passing along a public street or road, desires to cross a railroad track at such a crossing. In discharging these duties neither party may ordinarily rely upon the other, but each is required to comply with what the law imposes; and in case it is a conceded or undisputed fact that the complaining party has not complied with the law in this regard the question, except under peculiar circumstances, becomes one of law regardless of the negligence of the other party.

The law, as it has been generally adopted and applied by the courts of this country, is quoted by Mr. Justice Coffey in *Mann v. Belt Ry. & Stockyard Co.,* 128 Ind. 142, 26 N. E. 820, as follows:

"When one approaches a point upon a highway where a railroad track is crossed upon the same level, it is his plain duty to proceed with caution, and if he attempts to cross the track, either on foot or in vehicle of any description, he must exercise in so doing what the law regards as ordinary care under the circumstances. He must assume that there is danger, and act with ordinary prudence and circumspection upon that assumption. The requirements of the law, moreover, proceed beyond the featureless generality that one must do his duty in this respect, or must exercise ordinary care under the circumstances. The law defines precisely what the term 'ordinary care under the circumstances' shall mean in these cases. In the progress of the law in this behalf the question of care at railway crossings, as affecting the traveler, is no longer, as a rule, a question for the jury. The *quantum* of care is exactly prescribed as matter of law. In attempting to cross the traveler must listen for signals, notice signs put up as warnings, and look attentively up and down the track. . . . If a traveler, by looking, could have seen an approaching train in time to escape, it will be presumed, in case he is injured by collision, either that he did not look, or, if he did look, that he did not heed what he saw. Such conduct is held negligence *per se.*"

The same thought in different language is also expressed in the following well-considered cases: *Herbert v. S. P. Ry. Co.*, 121 Cal. 227, 53 Pac. 651; *Durbin v. Or. Ry. Co.*, 17 Or. 5, 17 Pac. 5, 11 Am. St. Rep. 778; *Allen v. Maine Cent. Ry.*, 82 Me. 111, 19 Atl. 105; *Pyle v. Clark* (C. C.), 75 Fed. 644. The cases which have declared and enforced the rule that where a person in approaching a railroad crossing has failed to look when he could have seen, or has failed to listen when he could have heard, or, in case he could neither see nor hear, has failed to exercise ordinary care to guard against accident before entering upon the track, is guilty of contributory negligence as a matter of law, and cannot recover, are very numerous. Among the great number of cases that might be cited we refer to the following well-considered cases: *Gothard v. Ala. & G. G. Ry.*, 67 Ala. 114; *Pepper v. S. P. Ry. Co.*, 105 Cal. 389, 38 Pac. 974; *Herbert v. S. P. Ry. Co.*, 121 Cal. 227, 53 Pac. 651; *Railroad Co. v. Crisman*, 19 Colo. 30, 34 Pac. 286; *Peck v. N. Y., N. H. & H. Ry.*, 50 Conn. 379; *Mann v. Belt Ry., etc., Co.*, 128 Ind. 138; 26 N. E. 819; *Nixon v. C. R. I. & P. Ry.*, 84 Iowa 331, 51 N. W. 157; *U. P. Ry. Co. v. Adams*, 33 Kan. 427, 6 Pac. 529; *Allen v. Maine Cent. Ry.*, 82 Me. 111, 19 Atl. 105; *Shufelt v. Railroad Co.*, 96 Mich. 327, 55 N. W. 1013; *Harris v. M. & St. L. Ry.*, 37 Minn. 47, 33 N. W. 12; *Kelsay v. Mo. P. Ry.*, 129 Mo. 362, 30 S. W. 339; *Pa. Ry. Co. v. Righter*, 42 N. J. Law, 180; *Wilcox v. Rome & O. G. Ry.*, 39 N. Y. 358, 100 Am. Dec. 440; *Cooper v. North Carolina Ry. Co.*, 140 N. C. 209, 52 S. E. 932, 3 L. R. A. (N. S.) 391; *Durbin v. Oregon Ry. Co.*, 17 Or. 5, 17 Pac. 5, 11 Am. St. Rep. 778; *Holden v. Pa. Ry. Co.*, 169 Pa. 1, 32 Atl. 103; *Beyel v. N. N. & M. V. Ry.*, 34 W. Va. 538, 12 S. E. 532; *Seefeld v. C. M. & St. P. Ry.*, 70 Wis. 216, 35 N. W. 278, 5 Am. St. Rep. 168; *Horn v. B. & O. Ry.*, 54 Fed. 301, 4 C. C. A. 346; *Pyle v. Clark* (C. C.), 75 Fed. 644. We have refrained from citing more than one case from each State except from California, and we cited the second case from that State because the

matter as to when such a question is one of fact or merely of law is more fully discussed in the second case cited.

The principle involved in the foregoing cases is referred to and adopted in the case of *Silcock v. R. G. W. Ry.,* 22 Utah 179, 61 Pac. 565, although the accident in that case did not arise out of a collision at a crossing. In the case of *Teakle v. S. P., L. A. & S. L. Ry.,* 32 Utah 276, 90 Pac. 403, 10 L. R. A. (N. S.) 486, and in *Rogers v. R. G. W. Ry.,* 32 Utah 367, 90 Pac. 1075, we announced the doctrine that, although the employees of a railroad company are guilty of negligence, this does not absolve the injured person from exercising that degree of care which the law requires of him for his own safety, and if by the exercise of ordinary care on his part the injury could have been avoided, and if this fact is conceded, or is clearly established by the undisputed evidence in the case, then he is guilty of such negligence as will prevent a recovery unless the injury could have been avoided by the railroad company by the exercise of ordinary care after the injured person is discovered in a place of imminent danger. Where the latter phase of an accident is involved, it is ordinarily a question of fact for the jury, and this is so, although the precedent and concurring negligence of both parties is conceded or established without dispute. In the case of *Beyel v. N. N. & M. V. Rd. Co.,* 34 W. Va. 544, 12 S. E. 534, Mr. Justice Brannon, in passing upon the question involved in this case, makes the following remarks:

"I confess I am surprised to find the law on this subject as it is, and that, as an original question, I would have felt inclined to say that the omission of these statutory warnings would call for a recovery, that the statute designed them to arouse to caution and watchfulness those who, for the time, from the cares or griefs of life, are sunk in listless inattention, or even the careless and negligent; but the great current of authority does not justify this view. Perhaps, as the distinguished Judge Sharswood says, a public policy, designed to save the lives of the thousands who in these days travel on our railroads, has had a large share in so settling the law. We do not intend to impugn the general principle of *Nuzum v. Railroad Co.,* 30 W. Va. 228, 4 S. E. 242. We say that the omission of the

signals or warnings required by the statute is negligence in a railroad company *prima facie*, entitling an injured party to recover, and he is not, after proving such negligence and his injury, called on to prove that he is not guilty of contributory negligence; but when it appears from the evidence adduced by a plaintiff, or is satisfactorily shown by the defendant, that the plaintiff is guilty of contributory negligence, then it falls under the general principles of the law of contributory negligence above stated."

If we now apply the law as the same is declared by the overwhelming weight of authority in this country to the undisputed facts in this case, we are compelled to declare the acts of respondent's employees in failing to give the statutory signals in approaching the crossing in question as constituting negligence *per se*. If, however, we declare such an omission on their part as culpable negligence, how can we escape from declaring the omissions of the appellant in not looking (when he could have seen) before attempting to cross the railroad track as likewise negligent? It is true that appellant's counsel seeks to distinguish between the acts of negligence on the part of respondent's employees and those of his client. He asserts that while there was no excuse for omitting to comply with the law in operating the engine, and in giving the warning signals, the conditions and circumstances surrounding his client were such that it was a matter to be left to the jury to say whether it was negligent or not in omitting to look for the engine before attempting to cross the track. No doubt there are crossing accidents where the injured person may recover notwithstanding that he has, constructively or technically speaking failed to look or listen just before attempting to cross the railroad track at a particular place and under peculiar circumstances. In case the traveler has been misled by some affirmative act of some employee of the railroad company, such as a signal to proceed from a flagman stationed at the crossing, or where he has been placed in sudden peril by some act of omission or commission by the company, or where he is in a situation where danger is threatened from different directions and causes, and he has become confused thereby

and in like instances, he may be excused, although he may have gone into a place of danger and suffered injury through doing so. To afford an excuse, the threatened danger from some other source must, however, be imminent. This is clearly illustrated in the case of *Rodrian v. N. Y., N. H. & H. Ry. Co.,* 125 N. Y. 526, 26 N. E. 741, a case cited by appellant's counsel.

No such an excuse exists in this case. Quite true, appellant claims that he was misled by respondent's employees in this: (1) That the engine was standing still upon a switch track, and was headed in the opposite direction from where he intended to cross; (2) that another train was then approaching from the opposite direction which would have to pass over the crossing in question in a very short time; (3) that there was another track which crossed the track of respondent between the street crossing and the engine which the engine would have to cross before reaching the street crossing where appellant was injured; and (4) that appellant relied on the warning signals which were not given. When we come to analyze these matters, however, it is readily perceived that appellant simply assumed that they would occur simply because, in his judgment, under the circumstances, he naturally expected that they ought to occur. As to the first ground, appellant had no right to assume that, because the engine stood still where he saw it four hundred yards north of and when he was seventy-five yards from the crossing, it would remain there. Engines are put upon tracks to be moved, and may move in either direction and upon any track at most any time. This is a matter known to all. As to the second ground, while, when applied to an ordinary case of negligence, the assumption or expectation might have been permissible, appellant had no right to implicitly rely upon it, since the engine might move over the track ahead of the train which was then approaching from the south. As to the third ground, it is not made to appear from the evidence whether the crossing of the two tracks was such as required the respondent to either give a signal,

or to stop before crossing it. Our statute (section 447, Comp. Laws 1907) only requires engines or trains to stop at street grade crossings, and give a signal by two blasts of the whistle where no "interlocking signal apparatus and derailing switches" are used. In the absence of proof, neither the court nor the jury could assume that the crossing in question was one where signals were required. The failure to give such signals, if required, constituted negligence, and negligence is not presumed. Finally, as to the fourth ground, the appellant cannot excuse his want of ordinary care in entering upon the track because the respondent did not warn him not to do so. If this were permitted as an excuse, it would be a useless thing to require persons desiring to cross tracks to look and listen before doing so. While the duty to give these signals is imperative, and it is negligence *per se* to omit them, their omission confers no special right upon those who attempt to cross tracks at crossings, and they may not, for that reason, relax the care or the precautionary measures required of them by law. Where both parties fail in discharging the duty imposed, it is simply a case of concurring negligence, and neither party can recover against the other. If in this case either the respondent or one of its employees on the engines had sued appellant for any injury or damage caused by the collision, it would have been a complete answer for appellant to show that respondent's employees had failed to discharge the duty imposed by law, and that the injury or damage was the direct result of such failure. The same rule applies as against appellant. If we take the undisputed facts, there is absolutely no room for doubt that the appellant could have avoided the accident by the exercise of that ordinary care which the law imposes. His horse collided with the rear end of the engine while appellant was in the act of driving the horse onto the track at a right angle. If the engine started immediately after appellant looked and saw it on the switch track, then the engine must have traveled about four hundred yards while

he was going about seventy-five yards; and, if it started later, it traveled over the four hundred yards while he was going less than seventy-five yards. Whatever the time of starting or the speed of the engine, since both the engine and horse met on the track at the same time and place, the engine could have been only a short distance north of the crossing while appellant was still in a safe place on the street. If he had looked at a right angle to the north at any moment after he had turned to the east and before his horse stepped on the track, appellant could have avoided the collision. He had the same opportunity to look to the north as he had to look to the south, and he was not threatened by a train from the south, for he himself says it was not in sight, and he only saw the smoke of its engine in the distance. The law required that he should look both ways, in view of the danger involved to life and limb, before crossing the railroad track. This he admits he did not do, although nothing prevented him from doing it. Under these circumstances, the law characterizes his omission as careless or negligent, and prevents a recovery. If the facts in this case had been such that a jury might have found that respondent's employees, in the exercise of ordinary care, could have averted the collision after they had discovered appellant's peril or after, by the exercise of ordinary care, they ought to have discovered it, the case would have been different. In such event, the doctrine of "last clear chance" to avert the accident would apply. But how can this doctrine be applied in view of the evidence? If appellant had arrested the progress of his horse at any moment before entering upon the track, both he and his horse would have been in a place of safety. If we assume that the engineer and fireman or either of them in backing the engine toward the crossing saw the appellant approaching it, they had the right to assume that he would not enter upon the track immediately in front of the approaching engine. Moreover, the appellant was driving parallel with the track until he turned to make the crossing. It was,

therefore, not apparent that he would not continue on in the course he was pursuing until he turned to cross the track.

The only inference that can be deduced from appellant's testimony is that the engine got to the crossing at about the same time as he did. He says: "I just had time to twist my horse toward the south" when the rear end of the engine struck the horse, and dragged him along the track for some distance. While we have no disposition to pass upon the weight of the evidence, and disclaim any right to do so, we nevertheless may not ignore self-evident conclusions arising from undisputed facts. We may assume, therefore, that there was not sufficient time intervening between the time the appellant entered upon the track and the occurrence of the collision to have stopped the engine and averted the injury. As we understand the last clear chance rule, it applies only where the **4** person who invokes it is in a place of actual danger, and when his dangerous situation is, or, by the exercise of ordinary care, could have been, discovered by the person inflicting the injury in time to avert it. If the last clear chance rule be applied to accidents on railroad crossings before the traveler enters upon the track, or before he is in a position so near it that he necessarily must be injured by the passing train, then there is no apparent reason why a traveler who is approaching a crossing should look and listen before entering upon the track where the view is open to both the traveler and the engineer and fireman, or to either of the latter. In such a case it could always be contended that the traveler was, or, by the exercise of ordinary care could have been, seen approaching the track; that, from the fact that he was moving toward it, it was apparent that he intended to cross; and that, if he attempted to do so, he would likely be injured by being struck by the moving engine and hence the very act of going towards the track

ahead of a moving train places him in danger of injury which should have been averted by the engineer by stopping his engine before the collision occurred. If such were the law, contributory negligence upon the part of the traveler in not looking or listening before going upon a railroad track would almost become a reminiscence. It could always successfully be contended that, if the railroad employees had exercised ordinary care, they could have seen the traveler going into a place of danger, and if they did see him, or, by the exercise of ordinary care, could have seen him, the contributory negligence is immaterial because the collision could have been averted by the railroad company if the traveler was in apparent danger. So long as the traveler is in a place of safety on the side of the track and may remain so by stopping his horse or team, the rule can have no application.

Nor is the suggestion that the whole burden to avoid a collision is cast upon the traveler if the rule is strictly enforced that, in order to avoid a plea of contributory negligence, he must look and listen before entering upon or crossing a railroad track, of controlling force. In this connection it must be remembered that the rule is a rule of safety. It is also based upon that universal knowledge and experience that it is at least as easy, if not easier, for the traveler to see or hear an approaching train as it is for an engineer or fireman to see the traveler; that it requires less effort to arrest the movement of a horse, team, or other ordinary road vehicle than it does a train of cars or even a moving engine; that a railroad crossing is a place of danger which all must approach and enter with care, and, finally, that a collision endangers not only the lives of those who thoughtlessly or heedlessly enter upon the track, but it imperils the safety as well as the lives of many who are upon the train, and who are powerless to avert the collision and avoid the injuries that may result therefrom. The rule is therefore based upon common sense, reason, and sound public policy, which aims at avoiding danger by imposing

the duty to look and listen upon the part of the traveler before entering upon the track as well as upon the railroad company to announce by proper signals the approach of a train before making a public crossing. As we have said, the rule is one of safety, and is intended to protect, not only the traveler and the railroad company, but those as well who do not have the power to protect themselves against careless conduct of this character. The rule is amply justified upon this if upon no other ground. If it ordinarily constitutes negligence to disregard a duty imposed by law, there is no reason why the one who fails to discharge the duty shall not bear the consequences of his own act in so far at least as those consequences affect him, unless the law affords him some excuse for omitting to perform the duty imposed. The rule was not conceived for the purpose of shielding either the traveler or the railroad company. The company must for its negligence respond to all who may be innocently injured by a collision at a crossing as well as bear the injury to its property. The only immunity it obtains is against the traveler who, by his own careless act, brought on or directly contributed to his own injuries, and the traveler is equally immune against the like conduct by the company for any injury it may have sustained by a collision where the traveler and the company omitted an act required by law or failed to exercise due care. In such event, in the eye of the law, the parties are in equal fault, and hence will not be heard to complain of the concurring acts of negligence as against each other. Under the evidence in this case, no court would hesitate to pronounce the act of the railroad company in not giving any warning in approaching the crossing as constitutting negligence as a matter of law. By the same token, the law ought not to shield the traveler who omitted to perform a duty imposed upon him for his own safety by the same law, and for which omission he tenders no legal excuse. If the case were one where the question was merely whether ordinary care was or was not exercised in view of all the circumstances, we would have no hesitancy in leaving the

questions of both negligence and contributory negligence to the jury. This is not such a case, however. It is a case where the law itself declares that the omission to do a certain thing constitutes negligence. In such a case we have no right, whatever may be our desire, to cast the duty we ought to discharge upon others. In such a case the jury could, at most, excuse either the one or the other of the negligent parties from the consequences of his concurring acts of negligence. This, in view of the great danger incident to collisions on public crossings, the law does not sanction, but requires the court to pronounce judgment when the facts are undisputed or conceded that the party complaining is himself in fault. If once the rule be relaxed so as to permit the traveler to say that there were other things which diverted his attention, and for that reason he did not look or listen when such things in no way were threatening his personal safety, then the rule may as well be abrogated, and the whole matter be left to the jury in all crossing accidents, as is done in other cases of injury through negligence. We think where the evidence is clear, as in this case, the rule is a wholesome one, and ought not to be weakened by unsubstantial distinctions. Limiting our conclusion, therefore, to the facts in this case, we are firmly convinced that the appellant was guilty of contributory negligence as a matter of law, and hence cannot recover in this action.

We have carefully examined all the cases cited by counsel for appellant, but have been unable to find any warranty in them for permitting a recovery in this case in view of the undisputed facts. We shall very briefly review them. *Continental Imp. Co. v. Stead,* 95 U. S. 161, 24 L. Ed. 403, is the strongest case in appellant's favor in view of the facts as stated in the opinion. The facts, however, are very meagerly reported, and not a single case is cited in support of the conclusion reached. From the later federal cases and the doctrine therein announced, it is only fair to assume that there was something in the record in this case

which made it a case for the jury to pass on and which is not clearly made apparent in the opinion. *Texas & P. Ry. Co. v. Cody,* 166 U. S. 606, 17 Sup. Ct. 703, 41 L. Ed. 1132, is a case in which the conditions were peculiar. The night was very dark, and the plaintiff testified that, before entering upon the crossing, he did stop and look and listen. Under these circumstances, the case was clearly one for the jury to pass on and the court so held. *Chicago, R. I. & P. Ry. v. Sharp,* 63 Fed. 532, 11 C. C. A. 337, is a case where the evidence was conflicting, and the testimony of plaintiff and the conditions were very much alike in that and the Cody Case, and the court held it was properly submitted to the jury. *Jennings v. St. L. & I. M. Ry. Co.,* 112 Mo. 268, 20 S. W. 490, is a case in which the facts and surrounding circumstances were such that required the judgment of the jury, and the court so held. *Louisville & N. Ry. Co. v. Webb,* 97 Ala. 308, 12 South. 374, is a case which involved the question of willful and wanton negligence on the part of the railroad company, and it is held that mere want of ordinary care on the part of the traveler does not defeat a recovery in a case of willful or wanton negligence. This, no doubt, is the law. *Lloyd v. St. L. & I. M. Ry. Co.,* 128 Mo. 595, 29 S. W. 153, 31 S. W. 110, is a case which involved the last clear chance doctrine, and it was therefore properly submitted to the jury. *Hart v. Devereux,* 41 Ohio St. 565, is a case so meagerly reported that it is impossible to determine whether the case was one which ought to have been submitted to the jury or not. The court held that the case was properly submitted to the jury, and the decision must be assumed to be correct. *Crumpley v. Hannibal & St. J. Ry.,* 111 Mo. 152, 19 S. W. 820, was a case of death caused by a collision at a public crossing. Under the Missouri statute, the burden of proof is cast on the railroad company in a case of a collision at a public crossing to show that its negligence in failing to give the statutory signals did not bring about the collision. In this case there was no evidence of the conduct of the decedent in attempting

to cross the track, nor any from which his conduct could be inferred. It was held, therefore, that the jury were justified in finding him free from negligence, since the law presumes, in the absence of evidence to the contrary, that the deceased was free from negligence. It will be seen, however, in a much later case from the same court, namely *Kelsay v. M. P. Ry. Co.,* 129 Mo. 362, 30 S. W. 339, that where it appears, as in the case at bar, that the plaintiff failed to exercise the care required by law before attempting to cross the track, he cannot recover, notwithstanding the statute referred to in the Crumpley Case. *Texas & P. Ry. Co. v. Spradling,* 72 Fed. 152, 18 C. C. A. 496, is a case involving a very dangerous crossing which was maintained by the railroad company, and in connection with it also involved the last clear chance doctrine. *Thomas v. G. T. Ry. Co.,* 86 Mich. 496, 49 N. W. 547, is a case which was reversed by the Supreme Court because the trial court refused to instruct the jury in accordance with the rule of law stated in the numerous cases cited by us above. *Evans v. Railway Co.,* 66 N. H. 194, 21 Atl. 105, is a case like the case referred to in 111 Mo. 152, 19 S. W. 820. There was no evidence of plaintiff's want of ordinary care, while the negligence of the defendant company was clearly shown. It was held that, under these circumstances, a nonsuit was improperly granted. The case of *Greany v. Long Island Ry. Co.,* 101 N. Y. 419, 5 N. E. 425, is a case where the surrounding conditions and circumstances were such that the Court of Appeals of New York was induced to hold that it was properly submitted to the jury. While the facts are not specifically stated, the reasons given on page 427 of the opinion clearly show that the case fell within an exception to the general rule. To the same effect is the case of *Salter v. Utica & B. Ry.,* 75 N. Y. 273; *Rodrian v. N. Y., N. H. & H. Ry.,* 125 N. Y. 526, 26 N. E. 741, and *Cooper v. North Carolina Co.,* 140 N. C. 209, 52 S. E. 932, 3 L. R. A. (N. S.) 391, are directly contrary to appellant's contention, but are in full accord with the cases cited by us.

It could subserve no practical use to review the few remaining cases cited by counsel. While it must be conceded that there are some cases which are in apparent conflict with the law as it is stated in the opinions we have cited, it must likewise be conceded that the overwhelming weight of authority is in support of the rule we have attempted to outline in this opinion.

From the foregoing it follows that the trial court did not err in directing a verdict for the respondent, and that the judgment therefore should be, and it accordingly is, affirmed. In view of the great length of respondent's brief, made so by very copious quotations from the decided cases, counsel for the respective parties have agreed that neither party shall recover costs in case of an affirmance of the judgment, and it is so ordered.

McCARTY, J., concurs.

STRAUP, C. J. (dissenting).

The proposition has become well established that a traveler in approaching a railroad crossing is required to look up and down the track and listen for approaching cars and trains; and that when the evidence shows that the view was unobstructed, and that there were no complicated circumstances calculated to deceive and throw him off his guard, and that he attempted to cross without looking and listening, his conduct will be declared negligence on the facts by the court as matter of law. With this I fully agree. I think that when a traveler, under ordinary circumstances, approaches and attempts to cross a railroad at a crossing without looking and listening for approaching cars and trains, reasonable minds may not differ upon the question that such conduct shows negligence on his part. The conduct is, therefore, declared to be negligence by the court. Courts, however, do not reach such conclusion on the theory that the law has imposed positive

or specific duties on the traveler to look and listen for cars and trains. The law does prescribe specific duties on railroad companies when approaching crossings to give signals, and, when operating locomotives and trains in towns and villages, to ring the bell and restrict the speed of their trains. Such specific duties are generally prescribed by statute or ordinance; but there is no statute or ordinance requiring a traveler in approaching a crossing to look or listen; nor are his duties in the premises in such case otherwise defined or prescribed by statute or other legislative enactment. When courts say that a traveler who in approaching a crossing failed to look and listen for approaching trains and cars is guilty of negligence, they do so, not because the traveler failed to perform some specific duty prescribed by law, but because he failed to exercise due care in the premises. His conduct in such case is declared negligent as matter of law upon the same principle that a traveler's conduct in recklessly driving in broad daylight against a telegraph pole in a highway would be declared negligent as matter of law. The law, however, does not prescribe specific duties upon the traveler to look or listen for cars in the one case any more than to look for telegraph poles in the other. The one, of course, involves greater danger than the other; and hence a greater amount of vigilance and care is demanded of the traveler in the one case than in the other. And, while courts have quite generally and uniformly held that the failure of a traveler in approaching and attempting to pass over crossings to look and listen for approaching trains and cars conclusively shows negligence on his part—rulings with which I fully agree—nevertheless it is not correct to say that the law imposed specific duties on the traveler in such a case to look and listen in the same sense that the law has imposed specific duties on railroad companies to give signals and restrict the speed of its trains.

Now, if the evidence in this case conclusively showed that the plaintiff in approaching and in attempting to drive over

the crossing failed to look and listen for approaching cars, I would readily concur in the affirmance of the judgment. The effect of the ruling of the majority members of the court is that the plaintiff under all the circumstances was required to look both ways just immediately before entering upon and attempting to drive over the railroad track, and that any conduct short of that must be held negligence as matter of law, regardless of the care exercised by him in looking both ways in approaching the crossing. The accident happened several blocks from the Union Depot at Ogden City, at a crossing of the defendant's main track running north and south, and Twenty-first street, a public street running east and west. The railroad track was about in the center of a public street called Wall avenue, also running north and south. The plaintiff in going east crossed the railroad track, and entered Wall avenue about a half a block north of the crossing where the accident happened. As he entered Wall avenue, he noticed an engine standing, not on the main line, but on a switch track to the north of him, leading to a brewery. The engine was headed towards the north and towards the brewery. After entering Wall avenue, the plaintiff turned and drove south along that street parallel with the defendant's main line. About half way between the place where the plaintiff entered Wall avenue and the crossing where the accident happened, the defendant's main line was crossed by a railroad track of the Denver & Rio Grande Railway Company. The statute, which requires railroad companies to give signals when approaching crossings, and to continuously ring the bell when operating locomotives in towns and villages, also provides that all locomotives, with or without trains, before crossing the main track at grade of any other railroad company shall come to a full stop at a distance not exceeding four hundred feet from the crossing, and shall not proceed until the way is known to be clear, and two blasts of the whistle are sounded at the moment of starting, provided that, whenever interlocking signal apparatus and derailing switches are adopted,

such stop shall not be required.    After the plaintiff, driv-
ing along at a trot, had proceeded south on Wall avenue and
had crossed the Denver & Rio Grande track, and was about
seventy or seventy-five yards from the crossing where the
accident.happened, he looked back to the north, and saw that
the defendant's main line was clear, and that the engine
was still standing on the switch track, then about four
hundred yards away from him, in the same position as he.
saw it when he first entered Wall avenue.    He saw the
smoke of a train coming from the south on the defendant's
main track, which he took to be, and which was, the Cache
Valley train, and which was known to him to be due at
that time.    On reaching Twenty-first street he attempted to
cross the defendant's main track.    His attention was direct-
ed to the train coming from the south.    He did not again
look to the north to see what had become of the engine
on the switch track.    He testified, in effect, that, when he
last saw the engine standing on the switch track and headed
in a direction away from him, he assumed that the engine
would not leave the switch track, and that it would not be ope-
rated south along the main track in the face of the ap-
proaching Cache Valley train, and that it would not be ope-
rated over the Denver & Rio Grande track before coming
to a stop.    After the plaintiff last looked to the north, the
engine on the switch track was backed onto the main line,
and operated to the south at a rate of speed of from fifteen
to twenty miles an hour over the Denver & Rio Grande
track without stopping, and without giving signals or warn-
ing of its starting or approach, and collided with the plain-
tiff's horse and vehicle at the intersection of the defendant's
main line and Twenty-first street, as he was in the act of
crossing.

Unless a hard and fast rule shall be laid down that a
traveler is bound to look attentively both ways at the exact
moment just before entering upon a railroad track at a cross-
ing, notwithstanding the care exercised by him in looking
both ways for approaching cars or trains in approaching

the crossing, I think the question of plaintiff's negligence was one of fact for the jury. I am not prepared to lay down such a rule, when applied to the facts and circumstances shown in this case. I think the authorities generally do not support such a doctrine. The triers of the facts may say that when the plaintiff was seventy-five yards from the crossing, and looked to the north and saw the main track clear, he was not justified in assuming that it was clear after he had traveled that distance, and that he was negligent in failing to look again to the north at the exact moment of entering and attempting to drive over the railway track; that the plaintiff was imprudent when he assumed that the engine standing on the switch track would remain there a sufficient length of time to enable him to cross, and that it would not be backed and propelled along the main track at a rate of speed of from fifteen to twenty miles an hour and operated over the Denver & Rio Grande track without stopping; that he was negligent in assuming that, if a locomotive was operated from the north, it would stop four hundred feet north of the Denver & Rio Grande track, and that blasts of the whistle would be sounded before it was again put in motion; and that he was negligent in giving too much attention to the approaching train from the south, and that he ought to have given more attention to the north, from which direction no train or car was approaching when he last looked up the track seventy-five yards away from the crossing. I am, however, of the opinion that it ought not to be held as matter of law that the plaintiff from what he saw and knew had no right to assume, under all the facts and circumstances of the case, that he was not in danger of any train or cars operated from the north along the track over which he was about to cross. It must be borne in mind that this is not a case of an ordinary crossing, where a locomotive or train of cars was approaching, and where, by looking, its approach could have been seen and discovered. Here the plaintiff looked twice to the north for approaching trains and cars— once when he entered Wall avenue, and again when he was

seventy-five yards from the crosssing. Each time the track over which he was about to cross was clear. Each time he saw the engine standing on the switch track. His situation was made dangerous, not from a train or locomotive approaching on the track over which he was about to cross, but by the act of the defendant in suddenly and without, warning propelling an engine, as shown by the evidence, at an unusual speed, from one track to another.

It is, in effect, said that the plaintiff had no right to assume that the engine would remain on the switch track a sufficient length of time in which he could safely pass, and that it would not be propelled south along the main track before he had passed over the crossing. I think no conclusive presumption in respect of such a matter can be indulged either way. The question whether the plaintiff was justified or was negligent in drawing such an inference at the time depended upon the facts and circumstances of the case, and was one of fact. So, too, it is also, in effect, said that the plaintiff had no right to assume that the defendant in propelling an engine south along the main track would stop or check it before crossing the Denver & Rio Grande track, and that signals and warning of its approach would be given, and the speed of the engine limited and restricted. A plaintiff may not excuse or defend his own negligence by showing that he relied on the presumption that the defendant would observe the law, and that he would exercise ordinary care; that is, if it is determined that the plaintiff was negligent, his negligence may not be excused or defended by showing his reliance on such presumptions. But it must be remembered that the question to be determined is: Was the plaintiff conclusively guilty of negligence? To assume the conclusion as a first premise of a syllogism does not elucidate anything. I have always understood the law to be that the rights and duties of a traveler and a railroad company at a crossing are in the main mutual and reciprocal. The whole duty is not cast on either one to prevent collisions and injuries. A plaintiff may not heedlessly and carelessly at-

tempt to pass a crossing on the assumption that the railroad company will look out for and not injure him. Neither may a railroad company carelessly and heedlessly operate its locomotives and trains of cars over crossings at an unusual and excessive speed, and without giving signals and warning, on the assumption that the traveling public must look out for their own safety, and keep out of the way. Each is required to exercise ordinary care to prevent collisions and injury. There is no presumption that either party will be negligent. There is a presumption that in approaching a crossing each will exercise due care. Each party may regulate his conduct on the assumption that the other party will exercise ordinary care—not that he will be negligent. If a statute or an ordinance requires specific duties to be performed, such as the giving of signals and the restricting of the speed of trains, or of stopping them, the traveling public may assume that such duties will be performed, for every reasonable presumption is to be indulged in the observance of the law by all persons, whether private persons or corporations. In considering the question whether the plaintiff was guilty of negligence, to say that he had no right to indulge the presumption that the defendant, in the operation of its locomotives and cars, would observe the statutory requirements, is, in effect, to say that he had no right to presume what the law itself presumes. To say that the plaintiff was required to regulate his conduct on the assumption that the defendant would operate an engine at an excessive and unusual speed over the Denver & Rio Grande track without stopping, and without giving signals or warning of its starting or approach, is to say that the plaintiff was required to anticipate negligence on the part of the servants and agents in charge of the engine.

There may be instances where, though one looked for approaching cars seventy-five yards from a crossing and saw none, he still would be negligent in not looking again before attempting to cross; but ordinarily the questions whether one exercised ordinary care in looking at the proper time

and at the proper place, and how frequently and attentively he ought to have looked, or whether he ought to have looked continuously, are questions of fact for the jury. Especially is this true where a man of prudence may have received fixed impressions from the appearances of things surrounding him. The observations made by the court in the case of *Bonnell v. Delaware, L. & W. R. Co.,* 39 N. J. Law 189, I think, in the main apply here. There the plaintiff, when about one hundred yards from the railroad, looked and saw a train with the rear towards him, and was deceived by appearances, supposing it was going away from the crossing. He was driving a wagon, and proceeded to cross the track without looking any more. The court there said: "The fact upon which the defendants mainly relied in this case was that the plaintiff did not look up the track as he approached, and before he attempted to cross it. But the plaintiff had looked when about one hundred yards from the crossing, and saw, as he supposed, a train going in the opposite direction, with the rear towards him. He was not required by any legal rule to look continually until he crossed the track. A man of prudence might have received a fixed impression from the appearance of the train that it was going away from the station."

I also think that the rule announced in the case of *Gratiot v. M. P. R. Co.,* 116 Mo. 450, 21 S. W. 1094, 16 L. R. A. 189, and in the cases there cited, is here applicable and should be applied.

I am of the opinion that both the questions of the defendant's and the plaintiff's negligence ought to have been submitted to the jury. I therefore dissent.