EDWARD MARTYN *vs.* NEW YORK AND BOSTON DESPATCH
EXPRESS COMPANY.

SAME *vs.* NEW YORK, NEW HAVEN, AND HARTFORD
RAILROAD COMPANY.

GEORGE W. KNAPP *vs.* NEW YORK AND BOSTON DESPATCH
EXPRESS COMPANY.

SAME *vs.* NEW YORK, NEW HAVEN, AND HARTFORD
RAILROAD COMPANY.

Suffolk.   March 14, 1900. — June 20, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER,
HAMMOND, & LORING, JJ.

*Personal Injuries — Due Care — Assumption of Risk.*

Persons who are struck when it is dark by a car on the track of a railroad company while they are engaged in a voluntary work for their own benefit, namely, that of carrying a tricycle that it might go earlier than in the regular course of transportation, they having disregarded the suggestion of the defendant's servant to take the tricycle by a safe way, and who, although they are honestly told that the tracks are clear, must have known that, as regards the chances of cars coming unexpectedly, they were acting at their own risk, are not in the exercise of due care.

FOUR ACTIONS OF TORT, for personal injuries.   Trial in the Superior Court, before *Gaskill,* J., who, at the conclusion of

the evidence for the plaintiffs, at the request of the defendants, directed the jury to return verdicts in the four cases for the defendants; and the plaintiffs alleged exceptions, which appear in the opinion.

The case was argued at the bar in March, 1900, and afterwards was submitted on briefs to all the justices.

*I. R. Clark & S. D. Elmore,* for the plaintiffs.

*C. F. Choate, Jr. & R. F. Herrick,* for the defendants.

KNOWLTON, J.   Each of the two plaintiffs has sued each of the two defendants to recover for an injury from being struck by a car on the track of the Old Colony Railroad Company, which was leased and used by the New York, New Haven, and Hartford Railroad Company.   Adjacent to the tracks of the Old Colony Railroad Company, between them and South Street, at a distance of nearly four hundred feet from the southerly end of the passenger station in Boston, was a building occupied by the defendant express company under an arrangement with the railroad company.   Along the northerly end of the building, occupying the whole space between the tracks on the east and South Street on the west, was a platform between four and five feet high, which ran northerly two hundred and eighty-five feet, covering nearly all of the triangular space, and about six and a half feet wide at the foot of the steps.   Next easterly of this platform was track No. 1 of the railroad company, and easterly of that was a platform about a foot high, and easterly of that were tracks No. 2 and No. 3, and then another low platform. The offices of the express company were in the building at the southerly end of the high platform.   On the evening of October 6, 1897, at about a quarter before seven o'clock, the plaintiffs went together to these offices with a tricycle weighing nearly two hundred pounds, five feet and two inches in width between the hubs of the hind wheels, five feet in length, and having wheels three feet and four inches high.   This tricycle they wished to send by express to Brockton.   After they had delivered it and paid the expressage, they were informed that the express matter and the sheet for the express car, which was to go to Brockton that night, had gone over to the car, which stood on track No 3, and that if they wished to have the tricycle go to Brockton that night they would be obliged to take it over

to the car themselves. They then asked how they could take it, and were told that they could take it up to the end of the platform and down the steps and across the tracks. The regular way used by the express company was through the building and over a plank crossing farther south. They asked about the trains, and were told it was all right, there were no trains going in or out; the track was clear. Accordingly they took the tricycle nearly to the end of the platform, and found that it was too wide to be wheeled down the steps. They then turned around and brought it to a point fifteen or twenty feet from the end of the platform, and Martyn went down the steps and came back along the track, while Knapp remained on the platform, and they lifted the tricycle part way down, where Martyn held it, while Knapp came down the steps and along the side of the platform to help him. While they were together there, engaged with the tricycle, a car, which was shunted back from an engine, came along and struck them. The space between the platform and the track was very narrow, and it was so dark that they could see an approaching car only a short distance. They gave no warning or information that they were upon the track. They knew that the tracks were a busy place where cars were passing back and forth to the station. They understood that the person who told them that the tracks were clear had no control over the movement of cars upon the tracks, and they must have known that in such a place cars besides the regular trains are frequently moved, of whose coming an employee of the express company would have no previous knowledge. They were engaged in a voluntary work for their own benefit, that the tricycle might go earlier than in the regular course of transportation; and, although they were honestly told that the tracks were clear, they must have known that, as regards the chance of cars coming unexpectedly, they were doing it at their own risk. If they had followed the suggestion of the defendants' servant, and taken the tricycle down the steps, they would have been in a safe place there, and would only have found it necessary to roll it across one track to a safe low platform, and then across two other tracks to the platform where the express car stood, and in going these short distances it would have been easy to avoid approaching cars. They could not properly understand

the statement of the express agent as an assurance that the tracks would remain clear for such a length of time as to enable them to get the tricycle carefully and safely down the side of the high platform and across the track by the method which they adopted. There was no planking or other indication between the rails near the steps, or elsewhere in the vicinity, to signify that the place was designed for pedestrians. The vehicle was heavy and unwieldy, and it was obvious, before they took their position on the track by the side of the platform, that they would be engaged there for a considerable time in getting it down and across the track, and that they would be unable to escape if a car should come. We are of opinion that, on the undisputed facts, there is no evidence that they were in the exercise of due care while exposing themselves in the manner described, and that verdicts for the defendants were rightly directed. In this view of the cases it is unnecessary to consider other questions which were argued.                        *Exceptions overruled.*