GEORGE W. WILSON, ADMINISTRATOR, APPELLANT, V. UNION
PACIFIC RAILROAD COMPANY ET AL., APPELLEES.

FILED NOVEMBER 17, 1921. No. 21353.

1. **Railroads: CONSIGNEE AN INVITEE.** Where a person or his agent
goes upon the railroad right of way for the purpose of obtaining
goods consigned to him, which the railroad company has unloaded
and piled upon the ground, such person is an invitee and not a
trespasser, and the company owes to him the duty of exercising
ordinary care not to injure him.

2. ———: **LIABILITY FOR DEATH.** In such case, where an engineer
sees, or, by the exercise of ordinary care, should have seen, such
person standing within the clearance of his train, or so close
thereto as to be in a place of peril, the mere fact that such person
has negligently placed himself in a place of danger does not
excuse the engineer in running him down, if, in the exercise of
ordinary care, a collision could have been averted.

3. ———: ———. In such case, the engineer may assume that an
adult person will not remain in a place of danger, but that he
will step to one side and avoid injury. This assumption, however,
may not be carried beyond the point where a person of ordinary
prudence would infer from appearances that the person was
oblivious or heedless of the danger, and from that moment the
engineer is charged with the duty of exerting all reasonable ef-
forts to avoid a collision.

4. ———: **NEGLIGENCE: QUESTION FOR JURY.** Evidence examined, and
*held* that the question of negligence, under the doctrine of "the
last clear chance," should have been submitted to the jury.

APPEAL from the district court for Dawson county:
HANSON M. GRIMES, JUDGE. *Reversed.*

*Halligan, Beatty & Halligan,* for appellant.

*N. H. Loomis, Edson Rich,. C. A. Magaw* and *T. W.
Bockes, contra.*

Heard before MORRISSEY, C.J., LETTON, ROSE, DEAN,
ALDRICH, DAY and FLANSBURG, JJ.

DAY, J.

In a former unpublished opinion by the commission, we

affirmed the judgment of the lower court. A rehearing was granted, and the case submitted to the court.

The plaintiff, as administrator of the estate of his deceased son, Joseph E. Wilson, brought this action against the defendant to recover damages for negligently causing the death of deceased. At the close of the plaintiff's testimony, on motion of the defendant, the trial court directed a verdict for defendant, and entered judgment accordingly. The plaintiff appeals, assigning as error this action of the court.

In stating his cause of action, the plaintiff relied upon a number of specifications of negligence, one of which only need be considered at this time, namely, the failure of the defendant to blow the whistle or give other warning of the approach of the passenger train. The answer of the defendant admitted that the deceased came to his death by a collision with its train; denied that it was negligent; and alleged that deceased's death was due to his own negligence. The only question presented upon the reargument on behalf of the plaintiff was whether the case should have been submitted to the jury upon the doctrine of what is frequently termed "the last clear chance." A determination of this question involves an examination of the evidence.

The record shows that on January 4, 1918, at about 2 o'clock in the afternoon, on a partially cloudy day, Joseph E. Wilson, a young man slightly over 18 years of age, was struck and instantly killed by a west-bound passenger train on defendant's road. The train, consisting of an engine and 13 coaches, was one of the fast transcontinental trains operated by the defendant, and at the time of the collision was running at approximately 40 miles an hour. The collision occurred at a point 475 feet west of the depot in the village of Willow Island. At that point the defendant maintains a double track which, for practical purposes, may be said to extend in an east and west direction. The north track was used by west-bound trains, and the south track by east-bound

trains. The view to the east from the point of the collision is unobstructed for over a mile. There was a platform extending along the north side of the tracks, and also one on the south side of the tracks, used for convenience in handling freight. The plaintiff was engaged in operating a store, and his son Joseph, the deceased, was assisting him. On the day in question the plaintiff sent his son Joseph with an automobile to get some freight, consigned to plaintiff, which had been unloaded from the car by the defendant and piled upon the depot ground about 135 feet west of the platform, and on the south side of the double track. The freight was piled in an open field, and there was no road leading to it. The surface of the ground approaching this point was very uneven, full of holes, and not safe to drive over. Joseph took the automobile and stopped it on the north side of the double track, directly north of the place where the freight was piled. He had carried a few boxes across the tracks and placed them in the automobile, and, while thus engaged, a freight train approached from the west upon the south track, blowing the whistle, ringing the bell, and otherwise making considerable noise. Joseph stopped his work and went over to the south side of his automobile, leaning his arm on the car, his face looking toward the west, watching the freight train. He continued to remain in this position until just the instant he was struck, when he turned his head slightly to the east, the train striking him on the left side of the head, resulting in instant death. The front end of the passenger train passed the front end of the freight train a little east of the depot, and the rear of the two trains cleared about 260 feet west of the point of collision. Neither of the trains were scheduled to stop at Willow Island, and did not do so on this occasion. There is no doubt under this record that the deceased was rightfully on the defendant's right of way, and in no sense could he be regarded as a trespasser. By placing the freight upon the ground at the point where it was unloaded, the de-

fendant impliedly at least invited the consignee or his agents to come and get it.

Deceased being an invitee upon the premises, the duty which the defendant owed to him was to exercise reasonable and ordinary care for his safety. It° was conceded upon the oral argument, as it must be under the facts shown, that the deceased was negligent in placing himself in a position so close to the rails as to be within the clearance of the train. This, however, would not necessarily relieve the defendant from liability for negligently injuring him.

It is contended on behalf of the defendant that the deceased was in a place of safety, and that he moved into a place of danger just at the instant he was struck by the passing train; that at the time he moved into a place of danger it was then impossible for the defendant to do any act to avert the accident. There is testimony which tends to show that the automobile was standing ten feet distant from the north rail of the defendant's north track. It was stated in argument that the overhang of the engine was two feet and eight inches, and it was contended that if the deceased was leaning against the south side of the automobile, and had remained there, he would not have been injured. But there is also testimony from which the jury might have inferred that the deceased was within the clearance of the train from the time he took the position of leaning against the south side of his automobile. One of the witnesses testified, in speaking of the position of the automobile, that in his judgment it would just clear the train. There is testimony that the deceased did not move from his position except to turn his head slightly toward the east just at the instant he was struck. The fact that he was struck without moving the position of his body, coupled with the additional fact that the door of the automobile was wrenched, the fender dented, and the windshield broken, clearly made it a question for the jury to determine whether deceased was in a position of peril.

Upon the issue as to whether the whistle was blown, a number of witnesses testified that they did not hear any whistle on the passenger train. Negative testimony of this character is not usually regarded as sufficient proof that the circumstances sought to be established did not occur, but upon this issue there was some affirmative testimony. The witness, J. E. Jurgen, testified: "Whether it whistled up above or not, I don't know, but after it hit the mail crane east of the depot it did not whistle." There is no testimony showing how far east of the depot the mail crane was located, but there is testimony that the depot was 475 feet east from the point of the collision. Assuming that the depot extended east and west for 50 feet, the jury would have had the right to conclude that the train traveled 525 feet immediately preceding the collision without blowing the whistle.

Ordinarily a person on a railroad track, or so close thereto as to be within the clearance of a train, will step to one side in ample time to avoid injury, and an engineer in charge of a train may assume that an adult person in a place of danger, near or upon the tracks, will exercise ordinary care to remove himself to a place of safety, but such assumption may not be carried beyond the point where a person of ordinary prudence would infer from appearances that such person was heedless or oblivious of the danger, and from that moment the engineer in charge of the train is required to exercise all reasonable effort to avoid a collision.

Under the facts before us, we think it was for the jury to say whether the engineer saw, or, by the exercise of reasonable care, could have seen, the position of the deceased; whether he was in a position of peril; at what point as the train approached the deceased it would have become apparent to a man of reasonable prudence that the deceased was oblivious of the danger he was in; whether after that point was reached the engineer should in the exercise of reasonable care have blown the whistle; and whether, if the whistle had been blown, the collision

would have been averted.

In this discussion of the case we have refrained from considering the facts in relation to the other specifications of negligence alleged in the petition, for the reason that, in our opinion, the trial court correctly withdrew those issues from the consideration of the jury.

We are of the opinion that the court erred in failing to submit the case to the jury upon the doctrine of "the last clear chance," as applied to the charge of negligence in failing to blow the whistle, or otherwise give warning.

For cases supporting the doctrine discussed, see *Lucas v. Omaha & C. B. Street R. Co.*, 104 Neb. 432, and cases there cited; *Gunter's Admr. v. Southern R. Co.*, 126 Va. 565; *Southern R. Co. v. Bailey*, 110 Va. 833; *Chesapeake & O. R. Co. v. Corbin's Admr.*, 110 Va. 700; *James v. Iowa C. R. Co.*, 183 Ia. 231; *Lake Erie & W. R. Co. v. Brafford*, 15 Ind. App. 655; and note under *Martin v. Hughes Creek Coal Co.*, 41 L. R. A. n. s. 264 (70 W. Va. 711).

The judgment of the lower court is reversed, and the cause remanded for further proceedings.

REVERSED.